982 P.2d 940

**Helen Faye ROWLEY, Plaintiff–Respondent,**

v.

**James A. FUHRMAN, Personal Representative of the Estate of Kent A. Fuhrman, deceased, and James A. Fuhrman and Diane Fuhrman, husband and wife, Defendants–Appellants.**

No. 23664.

Supreme Court of Idaho.

Aug. 5, 1999.

Daniel L. Hawkley, Boise, for appellants.

Cosho, Humphrey, Greener & Welsh, P.A., Boise and Phil E. De Angeli, Boise, for respondent. Phil E. De Angeli argued.

SCHROEDER, Justice.

This is a dissolution of a joint venture case. James A. Fuhrman, acting on his own behalf and as the personal representative of the estate of Kent A. Fuhrman, who is deceased, (the Fuhrmans) and Diane Fuhrman, James Fuhrman's wife, appeal the trial court's findings that: (1) they and Mohammad Alidjani (Alidjani), intended to be bound to a joint venture agreement absent a writing; (2) they waived their statute of frauds defense by not pleading it or trying the issue with the express or implied consent of the plaintiff; and

(3) Alidjani did not consent to a termination of the joint venture.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Prior to February 1994, Alidjani and Kent Fuhrman discovered a piece of real property (property) owned by the State of Idaho that was going to be sold at public auction on February 24, 1994. They discussed the possibility of buying the property with Kent's brother, James Fuhrman. Alidjani and the Fuhrmans agreed to bid on the property. Each of them would contribute $3,000 to be used for the down payment. The parties planned to acquire the property for investment purposes, hoping to sell it later for a profit.

On February 24, 1994, Kent Fuhrman successfully bid $50,000 on behalf of the parties and paid the down payment of $7,901. He also signed a document entitled "Memorandum of Sale of Real Property" agreeing to purchase the property from the State. Alidjani gave Kent Fuhrman a check in the sum of $3,000 on which he had written "Eagle Rd. ⅓ ownership 2½ ac." Kent Fuhrman negotiated that check and retained the funds. James Fuhrman likewise gave his brother $3,000. These sums were paid in accordance with the agreement that each would initially contribute $3,000 to be used to make the down payment with the balance being put into an account from which taxes and expenses would be paid. At the time of the purchase Alidjani and the Fuhrmans each believed that they were one-third owners of the property.

On March, 16, 1994, Alidjani's wife, Helen Faye Rowley (Rowley), raised the subject of divorce with Alidjani. When the Fuhrmans learned that Rowley was contemplating a divorce from Alidjani, they decided that Alidjani would no longer have an interest in the property.

On May 20, 1994, James Fuhrman gave Alidjani a letter from his brother and him, seeking to return Alidjani's $3,000 and terminate his interest in the transaction. Alidjani declined to accept the $3,000, and no transaction was ever effected whereby Alidjani's

interest in the property was transferred to the Fuhrmans.

Alidjani and Rowley were divorced on March 6, 1996. The divorce decree awarded Alidjani's interest in the property to Rowley. On April 5, 1996, the Fuhrmans sold the property to a third party for $250,000, which was stipulated as its fair market value on that date. On April 29, 1996, Rowley commenced this action for an accounting regarding the property. The Fuhrmans denied that she had any interest in the property.

A bench trial was held, and the trial court issued a memorandum decision and order finding in favor of Rowley and ordering an accounting. The trial court found that: (1) the Fuhrmans and Alidjani entered into a joint venture to purchase the property as an investment for resale; (2) the parties intended to be bound in a joint venture even though the terms of the joint venture had not been reduced to writing; (3) the Fuhrmans did not plead the statute of frauds as a defense, nor was the issue tried with the express or implied consent of Rowley and thus the defense was waived; (4) the sale of the property did not breach the joint venture agreement because the parties purchased the property with the intention of selling it, the sale price equaled the fair market value, and the Fuhrmans, representing the majority of the joint venture, had the authority to sell it; and (5) after the divorce, Rowley had a one-third interest in the property, and when the Fuhrmans sold the property, they were required to account to Rowley for her interest.

The Fuhrmans appealed on February 26, 1997. Another bench trial was held on June 17, 1997, with respect to the accounting among the parties. The trial court entered judgment in favor of Rowley on June 24, 1997. The Fuhrmans moved for reconsideration and to amend the judgment. The trial court denied the motion. The Fuhrmans filed an amended notice of appeal.

## II.

### STANDARD OF REVIEW

■ Rule 52(a) of the Idaho Rules of Civil Procedure (I.R.C.P.) provides in pertinent part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment .... Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it.

"Findings of fact cannot be set aside on appeal unless they are clearly erroneous, *i.e.* not supported by substantial, competent evidence." *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 241–42, 869 P.2d 554, 558–59 (1993). Likewise, the "[t]rial court's findings and conclusions which are based on substantial although conflicting evidence will not be disturbed on appeal." *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, "the trial court's findings of fact will be liberally construed in favor of the judgment entered." *Id.*

## III.

### THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT THE PARTIES INTENDED TO BE BOUND IN A JOINT VENTURE EVEN THOUGH THE TERMS OF THE JOINT VENTURE HAD NOT BEEN REDUCED TO WRITING.

The trial court specifically found "that the parties intended to be bound even though the terms of their joint venture had not been reduced to writing." The Fuhrmans argue that the court erred and direct this Court to facts in the record which they assert support their position. The Fuhrmans rely on *Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978), for the following statement: "Where it is clear that one party has agreed that an oral agreement must be reduced to writing before it shall be binding, there is no contract until a formal document is executed." However, *Mitchell* also states: "Whether a contract exists when contracting parties agree to reduce their agreement to

writing, is a question of the parties' intent." *Id.*

■ The ultimate question of whether the parties intended to be bound to the joint venture even though the terms of their joint venture had not been reduced to writing is a question of fact to be resolved by the fact-finder. *See Murgoitio v. Murgoitio,* 111 Idaho 573, 576, 726 P.2d 685, 688 (1986) ("The question of the parties' intent was a question of fact for the trial court."); *Miller Constr. Co. v. Stresstek, a Div. of L.R. Yegge, Co.,* 108 Idaho 187, 189, 697 P.2d 1201, 1203 (Ct. App.1985) ("[D]etermining intent is ... the responsibility of the trier of fact."). The Court will not disturb the trial court's finding if there is substantial though conflicting evidence to support it. *Sun Valley Shamrock,* 118 Idaho at 118, 794 P.2d at 1391.

■ There is substantial evidence to support the finding of the trial court that the parties intended to be bound to the joint venture even absent a writing: (1) Alidjani wrote a $3,000 check to Kent Fuhrman with a notation on the "for" line indicating that he was a one-third owner of the property at the time the check was made; (2) Kent Fuhrman testified that it was his understanding that the check was for Alidjani's percentage ownership of the property; (3) Kent Fuhrman cashed the $3,000 check manifesting his assent to the one-third ownership arrangement; (4) Alidjani testified that his belief when he returned from the auction was that he was a one-third owner of the property; (5) James Fuhrman brought offers to Rowley and Alidjani not long after the property had been purchased at the auction; (6) there were several conversations between the parties which gave Rowley the understanding that she was a partner; and (7) Rowley acted as a participant in the joint venture by checking to make sure that unauthorized users were not parking their cars on the property and by attempting to sell the property, even soliciting a purchase offer.

## IV.

### THE TRIAL COURT DID NOT ERR IN DISMISSING THE STATUTE OF FRAUDS DEFENSE.

■ The statute of frauds is an affirmative defense that must be pled pursuant to I.R.C.P. 8(c). The trial court determined that "[t]he defendants did not plead the statute of frauds as a defense, nor was that issue tried with the express or implied consent of the plaintiff." Notwithstanding this determination by the trial court, the Fuhrmans argue that because their joint venture was going to be in excess of a year, the agreement was invalid because it was not in writing in violation of section 9–505 of the Idaho Code (I.C.). The Fuhrmans maintain that they did not waive this issue because I.R.C.P. 15(b) allows an amendment of the pleadings if the issue is tried by express or implied consent of the parties.

The Fuhrmans did not list the threshold issue of waiver with respect to their statute of frauds defense as an issue on appeal pursuant to Idaho Appellate Rule 35(a)(4) or otherwise address the issue in their opening brief. The failure to include the waiver issue in their statement of issues or address the issue in their opening brief eliminates consideration of it on appeal. *Grand Canyon Dories, Inc. v. Idaho State Tax Comm'n,* 121 Idaho 515, 517, 826 P.2d 476, 478 (1992); *State v. Prestwich,* 116 Idaho 959, 961, 783 P.2d 298, 300 (1989), *overruled on other grounds by State v. Guzman,* 122 Idaho 981, 985–87, 842 P.2d 660, 664–65 (1992). The Fuhrmans did argue waiver in their reply brief, but this does not cure the defect. *See State v. Raudebaugh,* 124 Idaho 758, 763, 864 P.2d 596, 601 (1993) (court did not allow defendant to raise the constitutionality of a jury instruction under Idaho Constitution when defendant only made references to the U.S. Constitution in opening brief, even though in his statement of issues he did not limit the issue of constitutionality to the federal constitution).

## V.

### THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S DETERMINATION THAT ALIDJANI DID NOT CONSENT TO HIS EXCLUSION FROM THE JOINT VENTURE.

■ The trial court found that "[o]n May 20, 1994, Kent [sic][1] gave Mo [Alidjani] a

letter from Kent and Jim ... seeking to return Mo's $3,000 and terminate his interest in the transaction. Mo declined to accept the $3,000 or to terminate his interest in the property." The trial court declined to change its finding on a motion for reconsideration, explaining that

> [o]nce Kent [sic] notified Mo of the Fuhrmans' intent, Mo erroneously concluded that because the joint venture agreement was not in writing, Kent and James could kick him out if they wanted to. Mo erroneously concluded that he had no legal recourse to assert his rights in the joint venture. Mo's misunderstanding as to his legal rights did not operate to wind up the affairs of the joint venture, nor did it constitute a forfeiture of his rights, which were later assigned to the Plaintiff.

As the trial court noted, Alidjani did not understand that a valid joint venture agreement could exist absent a writing, and his misunderstanding apparently led to what amounts to self-contradictory testimony. Nevertheless, there is substantial and competent evidence to support the trial court's finding that he did not consent to his exclusion from the joint venture. Alidjani refused to take back his $3,000 contribution to the joint venture, and he disposed of his interest in the property in his subsequent divorce from Rowley.

The Fuhrmans rely on an Oregon case, *Timmermann v. Timmermann,* 272 Or. 613, 538 P.2d 1254 (1975), to attack the trial court's determination that Rowley was entitled to profits earned during the entire existence of the joint venture. The Fuhrmans claim that Alidjani consented to both his exclusion from the joint venture and the continuation of the venture by the Fuhrmans. Consequently, they assert the value of his interest should be ascertained as of the date he consented to his withdrawal and that Rowley's share of the profits should be limited to the profits attributable to the use of Alidjani's $3,000.

The Fuhrmans' argument fails under the facts of this case. The general rule is that an agreement to form a joint venture remains in force until the purpose of the joint venture has been accomplished or has become impossible to fulfill. 46 AM. JUR. 2D *Joint Ventures* § 31 (1994). In contrast to the voluntary withdrawal of a joint venturer which may occur so long as there is consent from the coventurers, one joint venturer cannot unilaterally expel or exclude another joint venturer while the agreement is in force. *Id.; see* 59A AM. JUR. 2D *Partnership* § 509 (1987) ("Neither the common law nor statutory law give partners an inherent right to expel or dismiss another partner from the partnership, in the absence of a partnership contract providing to the contrary ...."). The trial court determined that Alidjani did not withdraw from the joint venture, and he did not consent to his exclusion. Because there was no voluntary withdrawal or consent by Alidjani, the joint venture agreement remained in force until the purpose of the joint venture was accomplished, *i.e.,* when the property was sold to a third party. Rowley, who succeeded to Alidjani's rights, did not cease to be associated in carrying on the purpose of the joint venture. She actively pursued the business of the joint venture. She checked the property for misuse and sought a purchaser, obtaining an offer of $250,000 for the property. The trial court properly determined that Rowley was entitled to profits earned during the entire existence of the joint venture. *Cf. Mays v. Davis,* 132 Idaho 73, 967 P.2d 275 (1998) (where dissolution of a partnership occurs upon the voluntary withdrawal of a partner, the value of the partner's interest in the partnership is ascertained as of the date of dissolution).

## VI.

### ROWLEY IS ENTITLED TO ATTORNEY FEES AND COSTS ON APPEAL PURSUANT TO I.C. § 12–121.

Rowley is entitled to attorney fees on appeal pursuant to I.C. § 12–121 if this

---

1. The trial court mistakenly stated that it was Kent that delivered the letter to Alidjani in May of 1994. However, the trial transcript reveals that it was James who actually delivered it.

Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation. *See Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997). "Attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence." *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990).

The Fuhrmans have asked this Court to reevaluate the evidence or second-guess the trial court's findings based on conflicting evidence. No substantial legal argument has been presented. Rowley is awarded attorney fees on appeal.

## VII.

## CONCLUSION

The decision of the trial court is affirmed. Rowley is awarded costs and attorney fees on appeal.

Chief Justice TROUT, Justices SILAK, WALTERS, and Justice Pro Tem JOHNSON, concur.