# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39493

|  |  |  |
|---|---|---|
| DENNIS LYLE AKERS and SHERRIE L. AKERS, husband and wife, | ) ) ) | Moscow, September 2013 Term |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | 2014 Opinion No. 5 |
| D.L. WHITE CONSTRUCTION, INC., DAVID L. WHITE AND MICHELLE V. WHITE, husband and wife | ) ) ) ) | Filed: February 7, 2014 |
| Defendants-Appellants, | ) ) | Stephen Kenyon, Clerk |
| and | ) ) | |
| VERNON J. MORTENSEN and MARTI E. MORTENSEN, husband and wife, | ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>affirmed</u> in part, <u>vacated</u> in part, and <u>remanded</u> for apportionment of attorney fees.

Robert Covington, Hayden, for appellants.

James, Vernon & Weeks, P.A., Coeur d'Alene, for respondents. Susan P. Weeks argued.

HORTON, Justice.

This appeal arises from a bench trial concerning an easement and trespass dispute. David and Michelle White, and D.L. White Construction, Inc. appeal from the district court's judgment regarding the scope and location of the Whites' easement across Dennis and Sherrie Akers' property and the district court's award of compensatory and punitive damages for trespass and emotional distress. We affirm the district court's judgment locating the easement and awarding damages, but remand the case for apportionment of attorney fees.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

This is the third time this case has appeared before this Court. Following a bench trial, this Court heard the first appeal in 2005 and issued *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 127 P.3d 196 (2005) (*Akers I*). After remanding the case to the district court in *Akers I*, it again came before this Court in 2008 and we issued *Akers v. Mortensen*, 147 Idaho 39, 205 P.3d 1175 (2009) (*Akers II*), which remanded the matter for additional fact finding. Previous appeals in this matter included two additional parties, Vernon and Marti Mortensen. However, the Mortensens have chosen to appeal the district court's findings and conclusions on second remand separately. Nonetheless, this opinion refers to the Whites, D.L. White Construction, Inc., and the Mortensens collectively as "Appellants."

The facts of this case are set out in detail in *Akers I* and supplemented by *Akers II*. However, the essential facts necessary to resolve the issues before the Court in this third appeal are as follows. There are three parcels of real property involved in this case: (1) Government Lot 2; (2) Parcel A; and, (3) Parcel B that all come together at a four-way corner, the section 19/24 corner.

> Government Lot 2 is located to the northeast, and Parcel B is to the northwest. The Akers own the southwestern corner of Government Lot 2 and the southeastern corner of Parcel B. Parcel A is located to the southwest and much of Parcel A, including that adjoining Parcel B, is owned by the Whites. The Mortensens own a portion of Parcel A located to the south of that owned by the Whites. The Reynolds Property[1] is located to the southeast.

*Akers II*, 147 Idaho at 42, 205 P.3d at 1178.

> Government Lot 2 is bisected roughly north to south by a county road, Millsap Loop Road. [The Whites] hold an easement for ingress and egress to Millsap Loop Road across portions of the Akers' property. Because the properties meet at a four-way corner, Parcel A and Government Lot 2 do not actually share a border. It is therefore physically impossible to access Parcel A from Millsap Loop Road in Government Lot 2 without also passing through some other property.

*Id*. The "other property" is the southwest corner of Parcel B, owned by the Akers. It is the route of passage though Parcel B where the Whites have a prescriptive easement that is the subject of this third appeal.

At one time, all of the real property at issue in this case was owned by W.L. Millsap. Around 1966, and possibly much earlier, an access road matching the general contours of the

---

[1] The Reynolds property is not at issue in this case nor are its owners a party; it has simply been used as a geographical reference throughout the course of this litigation.

easement at issue in this case ran from Millsap Loop Road, westward across the southern part of Government Lot 2. The road then went beyond the western boundary of Government Lot 2 into Parcel B, and then turned south into Parcel A. The Millsaps sold Parcel A to the Peplinskis in 1967. The deed expressly conveyed with Parcel A an easement across Government Lot 2. During the Peplinskis' ownership of Parcel A, they used the access road in the same manner as the Millsaps had used it.

The Akers purchased their property in 1980, the deed to which provides that they took the land subject to "easements of record or in view." *Akers I*, 142 Idaho at 297, 127 P.3d at 200.

> After the Akers moved onto their property, they altered the route of the access road at its eastern end where it connects to Millsap Loop Road. Rather than meeting Millsap Loop Road after a sharp turn to the north as before, (the original approach) the altered approach (the curved approach) starts to turn earlier and curves more gently to the north before meeting the county road. Both the original and curved approaches to the access road are on a triangle of land (the triangle) the ownership of which has been disputed …. [T]he Peplinskis[2] sold their property, Parcel A, to the Mortensens. The Mortensens later sold much of Parcel A, including the portion adjacent to Parcel B, to the Whites.
>
> According to later findings by the district court, the Whites and the Mortensens entered into a business relationship in which they planned to split their land in Parcel A into smaller lots to create a housing development. The court found that in order to accommodate their projected housing development, the Appellants also planned to widen the access road that crossed the Akers' property and connected the Appellants' land to Millsap Loop Road.
>
> In January 2002 or before, the Akers blocked the Appellants' use of the curved approach to the access road and also forbid the Appellants to travel on the western end of the access road, where it passes through Parcel B before connecting to the Appellants' property in Parcel A. The Appellants then brought in heavy equipment, including a bulldozer, to carve a route around the Akers' gate and to otherwise alter the access road. This led to a series of confrontations between the Akers and the Appellants, as well as alleged damage to the Akers' property and alleged malicious behavior by the Appellants.
>
> In response, the Akers filed [suit] for trespass, quiet title, and negligence.

*Id.* at 297–98, 127 P.3d at 200–01.

Following a bench trial, the district court quieted title in favor of the Akers to the triangle area and granted the Whites an easement 12.2 feet in width through Government Lot 2. This included an easement across the disputed triangle through the original approach, but not the

---

[2] The Peplinskis made minor changes to the access road with the permission of the Akers in approximately 1993. *See infra* p. 20.

curved approach, to Millsap Loop Road. However, the district court determined that the easement ended at the western boundary of Government Lot 2 and did not cross the section line into Parcel B. As a result, the easement was ruled to run from Millsap Loop Road to a point very close to, but not actually reaching, the Whites' property.

> The district court also awarded the Akers damages arising from the Appellants' trespass in the amount of $17,002.85, which was trebled pursuant to I.C. § 6-202 to a total of $51,008.55, to be paid by the Appellants jointly and severally. Sherrie Akers was awarded $10,000 in compensatory damages for emotional distress, also to be paid jointly and severally by the Appellants. Additionally, the Akers were awarded punitive damages in the amount of $150,000 to be paid by the Mortensens, and $30,000 to be paid by the Whites. Finally, the Appellants were determined to be jointly and severally liable to the Akers for costs and attorney fees totaling $105,534.06.

*Id*. at 298, 127 P.3d at 201.

In *Akers I*, this Court affirmed the district court's decision to quiet title to the triangle in favor of the Akers and also affirmed the district court's conclusion that the Whites have an express easement by reservation, 12.2 feet in width, through the southern portion of Government Lot 2, including through the triangle. However the matter was remanded for additional fact finding to determine if the Whites had a prescriptive easement though parcel B.

On first remand, the district court concluded that the Whites had a prescriptive easement 12.2 feet wide though Parcel B. In locating the easement, the district court found that the prescriptive easement turned immediately south, at ninety degrees, upon crossing section line 24 and entering Parcel B. The district court's decision regarding the scope and location of the prescriptive easement was appealed.

In *Akers II*, this Court found that the district court's conclusion that the road immediately turned at a ninety degree angle after crossing section line 24 was not supported by substantial and competent evidence. As a result, we remanded the case for "additional fact finding" in order to precisely determine the route of the Whites' prescriptive easement through Parcel B. However, we affirmed the district court's conclusion that the width of the prescriptive easement was 12.2 feet. We vacated the district court's judgment as to the location of the prescriptive easement, the award of damages, and the award of attorney fees and costs.

The remittitur was issued in *Akers II* on April 25, 2009. Thereafter, the district court ordered that each party submit briefing regarding the location of the prescriptive easement. The Whites submitted their Brief of Defendants White Re: Section 24 Easement Location on March

4

29, 2010. The Akers submitted their brief regarding the location of the easement on June 17, 2010. Additionally, on June 30, 2010, the Whites submitted a Motion to Admit Additional Evidence Re: Easement Location asking the court to admit newly discovered evidence relating to the location of the prescriptive easement. This motion was filed the day before the parties were scheduled to appear before the district court for oral argument as to the proper location of the easement. The Whites did not notice the motion for hearing. The additional evidence was two aerial photographs of the easement area taken in 1975 and 1982, respectively. Also on June 30, Mike Hathaway[3] submitted an affidavit that included higher resolution images of the two aerial photographs the Whites sought to introduce.

After waiting almost three months for the Whites to bring their motion before it for hearing, the district court determined that it would wait no longer, and on September 29, 2010, the district court issued its Memorandum Decision, Findings of Fact, Conclusions of Law and Order Re: Easement Location. The district court noted that easement width was not an issue on remand because in *Akers II* this Court affirmed the district court's finding that the width of the prescriptive easement was 12.2 feet. The district court held that the location of the easement was properly illustrated by a survey map prepared by Scott Rasor[4] and offered by the Akers. The Rasor map depicts the easement immediately bending to the south after entering Parcel B.

Following the district court's conclusion that the Rasor map represented the precise location of the prescriptive easement, the court initiated the damages phase of the second remand. On November 19, 2010, oral argument on the issue of damages was scheduled for January 26, 2011. The Whites waited until January 25, 2011, before first requesting that the court address their request to present additional evidence. The district court issued its Memorandum Decision and Order on Remand Re: Damages, and Order Denying Whites' Motion for Additional Evidence on Easement Location on March 18, 2011. The court's decision reflects understandable frustration with the dilatory manner in which the Whites had proceeded on their motion to admit additional evidence. However, the district court did not deny the motion on the basis of the Whites' delay. Rather, the district court addressed the motion on the merits, holding that the Whites did not cite valid authority that would permit the court to consider additional evidence on remand. The district court reinstated all damage awards originally assessed against

---

[3] Mike Hathaway is the survey manager at Welch Comer Engineering located in Coeur d'Alene.
[4] Scott Rasor is a professional land surveyor with 23 years of professional experience in Idaho, Washington, and Montana. Rasor was hired by the Akers to survey the relevant land in this litigation.

the Whites in the court's original judgment and held all defendants jointly and severally liable for the Akers' damages awards, with the exception of the punitive damage awards, because it found that Appellants were acting in concert under I.C. § 6-803 by pursuing a common plan that resulted in the commission of an intentional tortious act.

The district court issued its final judgment on August 10, 2011. The court ordered: (1) compensatory damages of $17,002.85 for trespass, trebled to $51,008.55 pursuant to I.C. § 6-202; (2) compensatory damages of $10,000 to Sherri Akers for infliction of emotional distress; (3) punitive damages against Vernon and Marti Mortensen in the amount of $150,000; (4) punitive damages against David and Michelle White in the amount of $30,000; and (5) attorney fees of $105,534.06.

## II. STANDARD OF REVIEW

> Review of a trial court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. A trial court's findings of fact will not be set aside on appeal unless the findings are clearly erroneous. If the findings of fact are based upon substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. This Court will not substitute its view of the facts for that of the trial court. The findings of the trial court on the question of damages will not be set aside when based upon substantial and competent evidence.

*Akers II*, 147 Idaho at 43–44, 205 P.3d at 1179–80 (citations omitted). Additionally, "[t]his Court freely reviews the interpretation of a statute and its application to the facts." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009).

## III. ANALYSIS

**A. The district court did not commit reversible error by refusing to accept additional evidence.**

In *Akers II*, we stated that this case "must be remanded to the district court for additional fact finding." 147 Idaho at 48, 205 P.3d at 1184. On remand, the Whites sought to have the district court consider two additional aerial photographs of the access road as it existed in 1975 and 1982. The Whites' motion asked the court to admit the additional evidence pursuant to I.R.C.P. 11(a)(2) and 59(a)(4) and under the authority of *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961) and *Cnty. of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986 (1968). The district court denied the Whites' motion because neither I.R.C.P. 11(a)(2) nor 59(a)(4) provided

6

authority for the submission of new evidence on remand. The court noted that I.R.C.P. 11(a)(2) only allows for reconsideration, not admission of new evidence, and that because the photographs were readily obtainable and could have been produced at trial, a new trial under I.R.C.P. 59(a)(4) was not warranted. In addition to finding that I.R.C.P. 11(a)(2) and 59(a)(4) did not provide authority for admitting additional evidence, the court concluded that aerial photos were unhelpful because they were not taken during the prescriptive period. The court stated:

> [T]hese photographs of the road in 1975 and 1982 are not taken *at the pertinent time period*, which was, and still is, 1966. Also, there were other photographs considered by the Court, which were taken at times near 1975 and 1986. Thus, the fact that these "newly discovered" photographs are more clear is of no assistance to the Court.

The Whites argue that the district court's denial of their motion to admit additional evidence was erroneous, should be reversed, and the issue remanded. The Whites contend that this Court's opinion in *Sinnett* established that in easement litigation the trial court must conduct hearings and receive additional evidence in order to precisely locate an easement when "necessary." The Whites argue that additional evidence was plainly needed in order to accurately and precisely locate the prescriptive easement. Additionally, the Whites contend that the district court erred in finding that the photos were not representative of the easement area during the pertinent time period because the pertinent period is 1966 to 1980, which includes the photo from 1975.

This Court "may reverse, affirm or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." I.C. § 1-205. Here, we remanded the action back to the district court to conduct "additional fact finding" in order to precisely locate the prescriptive easement through Parcel B. On remand for additional fact finding, it is within the discretion of the trial court "to determine whether the existing record is sufficient, or should be supplemented, in order to make the required findings of fact and conclusions of law." *Sherry v. Sherry*, 111 Idaho 185, 186, 722 P.2d 494, 495 (Ct. App. 1986) (citing *S-Creek Ranch, Inc., v. Monier & Co.*, 518 P.2d 930 (Wyo. 1974)). This Court has also held that a district court may supplement the record on remand in order to make findings ordered by an appellate court. *See Sinnett*, 83 Idaho at 524, 365 P.2d at

7

958.[5] "[W]hen appealing from an evidentiary ruling reviewed for abuse of discretion, the appellant must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). Furthermore, if the appellant does not present argument that the court's error affected a substantial right, the issue is waived. *Id.*

This Court's test to determine whether a trial court has abused its discretion consists of three parts: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Goodspeed v. Shippen*, 154 Idaho 866, 869, 303 P.3d 225, 228 (2013) (quoting *Schmechel v. Dillé*, 148 Idaho 176, 179, 219 P.3d 1192, 1195 (2009)).

In this case, the court erred in the analysis of the Whites' motion. First, the district court did not perceive admission of the additional evidence as discretionary. Rather, the court approached the issue rigidly, discussing why I.R.C.P. 11(a)(2) and 59(a)(4) did not provide the court with authority to admit the evidence. The district court did not apply this Court's holding in *Sinnett*, stating that *Sinnett* and *Dyer* "neither direct a new trial nor reconsideration."

More significantly, the district court misapplied the applicable standards for admission of additional evidence on remand in an easement dispute. The court stated that "[e]ven if there were a legitimate method for this Court to simply review this new material and reconsider its earlier decision, the photographs would not change this Court's decision." Based on this statement, it appears that the district court believed that it was precluded from considering additional evidence unless a new trial was ordered. This is not the rule under *Sinnett* and *Sherry*. The court also applied an erroneous legal standard regarding the prescriptive easement time period. The court stated "[t]hus, these photographs of the road in 1975 and 1982 are not taken *at the pertinent time period*, which was, and still is 1966." However, this Court in *Akers I* and *II*, explicitly stated that the pertinent time period to establish the existence of a prescriptive easement in this case was

---

[5] *Sinnett* involved a prescriptive easement for a driveway along a boundary of adjoining lots. *Id*. at 521, 365 P.2d at 955. In *Sinnett*, we held that the district court's judgment was insufficient because the description of the easement was inadequately detailed. *Id*. at 524, 365 P.2d at 957. As a result, we remanded the case stating, "this cause is remanded to the trial court with directions to modify the judgment by setting forth therein with precision and particularity, the origin, course and dimension, on the ground, of the area affected by the easement established, *with the right to take further testimony in this respect if deemed necessary.*" *Id*. at 525, 365 P.2d at 958. (emphasis added).

1966 (when the dominate and servient estates divided) to 1980 (when the Akers purchased the property). Thus, the aerial photograph from 1975 was squarely within the pertinent time period and it was error for the district court to hold otherwise.

However, in order for this error to require reversal, it must have affected the Whites' substantial rights. The Whites contend that the district court's refusal to admit the photographs "impaired a substantial property right of [the] Whites in having the right to access their property." However, the Whites must do more than simply allege the violation of a substantial right; they must actually demonstrate that the trial court's error "affected a substantial right." *Hurtado*, 153 Idaho at 18, 278 P.3d at 420.

Here, beyond merely proclaiming the impairment of a substantial right, the Whites have provided no authority or argument that demonstrates any such impairment. Rather, the contrary is true. As noted, the district court found that even if it had admitted the proffered evidence, "the photographs would not change this Court's decision." In our examination of the photographs, we have been unable to ascertain how the photographs would have assisted the district court in precisely locating the easement as they are essentially identical to all of the other aerial evidence previously introduced by both the Akers and the Whites. While the proffered photographs may be marginally clearer, they are nevertheless quite fuzzy.

Under the Rules of Civil Procedure, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Accordingly, although the district court applied an erroneous legal standard when deciding the Whites' motion, because the photographs are merely cumulative, the Whites' substantial rights were not impaired and the error will be disregarded.

**B. The district court did not err in locating the prescriptive easement across Parcel B.**

On appeal, the Whites raise issues with respect to both the location of the prescriptive easement as well as the district court's findings regarding the width of the prescriptive easement.

**1. The width of the prescriptive easement across Parcel B is not at issue in this case.**

Below, the district court refused to address any of the Appellants' arguments regarding the width of the prescriptive easement across Parcel B. The district court reasoned that width of the easement was not at issue on second remand because this Court in *Akers II* affirmed the district court's earlier finding that the width of the prescriptive easement was 12.2 feet. 147 Idaho at 48, 205 P.3d at 1184. We agree.

9

> It is a sound rule of practice, and one to which we have long subscribed, that a trial court will restrict its consideration in a remanded action to those questions specified in the mandate and will not re-examine issues already laid to rest by the appellate court affirmance on the preceding appeal.

*Tolman v. Tolman*, 93 Idaho 374, 375, 461 P.2d 433, 434 (1969).

The district court properly concluded that it could not revisit the width issue.

**2. The district court did not err in locating the prescriptive easement.**

In locating the easement across Parcel B, the district court considered two separate maps depicting the location of the easement. The first, submitted by the Akers, was the Rasor map. The second, submitted by Appellants, was referred to as the Welch Comer map. The court concluded that all of the evidence submitted by the parties demonstrated that the Rasor map properly depicted the location of the easement during the prescriptive period. The court stated:

> There is no evidence to corroborate the slight north bend of this roadway as it crosses the quarter corner point onto Parcel B (as depicted by the 2010 Welch Comer map). The Evidence the Court has reviewed shows the roadway began to bend toward the south, at or before it crosses the quarter corner point as it proceeds west onto Parcel B, and because of that bend, the evidence shows that the roadway traveled onto Parcel B only a short distance before it is entirely on what is now the Whites' land.

In concluding that the easement immediately dipped south onto the Whites' property after crossing the section 24 line, the court relied on substantial and competent evidence, including: (1) the Welch Comer map, which depicted the road further south, straddling the section 19 line through Government Lot 2, meaning that the road was already partially in Parcel A when it crossed the section 24 line; (2) Exhibit 253, which shows the road bending toward the south as it proceeds west past the section 19/24 corner; (3) Exhibit J1, an aerial photograph from 1958, which illustrates that the access road dips south onto the Whites' land before it even begins its shepherd's crook; and, (4) Exhibit I1, which indicates that that road moves south onto the Whites' land before the shepherd's crook is initiated.[6] Additionally, the district court relied, to some extent, on the fact that in 1945 a 20X50 foot easement existed in the south east corner of Parcel B that allowed access to Parcel A from Government Lot 2. The court concluded that this

---

[6] The district court also specifically relied on Exhibit D47, Exhibit D57, Exhibit 82, Exhibit 83, Exhibit E, and Exhibit 331 to support its conclusion that the access road immediately angled to the south after crossing section line 24 as illustrated by the Rasor map.

easement, which was terminated due to merger, further supported the Rasor map's depiction of the location of the easement.

The Whites argue that the district court's location of the easement is not supported by substantial and competent evidence. They take issue with the court's reliance on certain photographs, maps, testimony, and circumstantial evidence, all of which they contend is irrelevant because it is not representative of the access road during the prescriptive period.

"Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered." *Akers II*, 147 Idaho at 43, 205 P.3d at 1179 (citing *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999)). Further, if the trial court's findings are supported by substantial and competent evidence, even if the evidence is conflicting, they will not be set aside on appeal. *Id*.

The district court's conclusion that the access road immediately bends to the south after crossing section line 24, as depicted by the Rasor map, is supported by substantial and competent evidence. In *Akers II*, this Court specifically took issue with the district court's holding that the access road immediately turned at *a ninety degree angle* into Parcel A after crossing section line 24. 147 Idaho at 47, 205 P.3d at 1183. This Court concluded that the evidence indicated "that the access road made a gradual turn through Parcel B before entering Parcel A." *Id*. The Court specifically relied on Exhibit 253, a photograph of the shared boundary between Government Lot 2, Parcel B, and Parcel A, to conclude that the district court's ninety degree turn was not supported by substantial and competent evidence because such a path would require "traveling straight up a steep hill in order to access Parcel A." *Id*. at 47–48, 205 P.3d at 1183–84.

On second remand, by concluding that the easement is properly depicted in the Rasor map, the district court addressed this Court's concern in *Akers II* with locating the road directly over the steep hill depicted in Exhibit 253. The Rasor map depicts a slight angled departure over the section 19 line that initiates immediately after crossing section line 24. Thus, the district court is now in agreement with this Court's previous intimation that "the access road historically made a more gradual turn" as it made its way into Parcel A. *Id*. at 47, 205 P.3d at 1183.

We find Exhibit D57 to be particularly significant as support for the Rasor map's depiction of the location of the access road. It is helpful because it is one of the few photographs taken prior to the Appellants' excavation and consequent drastic alteration of the area in

11

question. The photo is from 1993; thus, it is outside the prescriptive period, but the only evidence of a change to the road was the Peplinski improvement. It is also helpful because it is one of the few exhibits with accompanying testimony referencing the section 19/24 corner. Peplinski testified:

> Q: …. I'm going to show you Defendants' 57. Do you recognize that area?
> A: Yes.
> Q: And what does the photo depict?
> A: That's the upper portion of the roadway before it turns into our property.
> ….
> Q: And do you know in relation to – do you have any idea in relation to the corner here where that photo is taken from?
> A: It appears I was probably standing real close to section corner there.

Based on Exhibit D57, teamed with Peplinski's testimony, the evidence indicates that the access road does in fact begin to dip south right at, or very near to the section 19/24 corner. As a result the evidence indicates that the access road does very quickly deviate south onto Parcel A as depicted by the Rasor map. Accordingly, we find that substantial and competent evidence supports the district court's location of the prescriptive easement through Parcel B, as illustrated by the Rasor map.

## C. The district court's compensatory damage awards were supported by sufficient evidence.

On April 1, 2004, the district court issued its Memorandum Decision and Order on Reconsideration, on New Trial Issues, and *Additional* Findings of Fact, Conclusions of Law Regarding Damages and Order. The district court found that Appellants willfully trespassed on the Akers' portion of the triangle, areas of Government Lot 2 outside the scope of the easement, and the Akers' property in Parcel B outside the scope of the easement. In order to repair the damage from the Appellants' trespasses, compensatory damages of $17,002.85 were ordered. The district court's March 18, 2011, Memorandum Decision and Order on Remand Re: Damages, and Order Denying Whites' Motion for Additional Evidence on Easement Location reaffirmed those earlier findings.

On appeal, the Whites take issue with three specific compensatory awards granted by the district court: (1) $1,760 to repair Akers' road surface due to Appellants' use of tracked machinery on the road; (2) $6,000 to repair the damage to the access road approach and areas outside of the easement; and (3) $1,939.31 to repair Akers' pickup after it was rammed by Vernon Mortensen.

12

"A district court's award of damages will be upheld on appeal where there is sufficient evidence supporting the award." *Griffith v. Clear Lakes Trout Co., Inc.*, 143 Idaho 733, 740, 152 P.3d 604, 611 (2007) (citing *Sells v. Robinson*, 141 Idaho 767, 774, 118 P.3d 99, 106 (2005)). "The evidence is sufficient if it proves the damages with reasonable certainty." *Id.* (citing *Inland Grp. of Cos. v. Providence Washington Ins. Co.*, 133 Idaho 249, 257, 985 P.2d 674, 682 (1999)).

### 1. Road repair.

Testimonial evidence, as well as an invoice, submitted at trial indicated that it would cost $1,760 to repair the surface of the access road after Appellants had repeatedly driven tracked machinery from Millsap Loop Road to the section 19/24 corner. The district court specifically found that Appellants ran tracked vehicles up and down the entire driveway, both inside and outside the easement area, with the intent to destroy the road surface and interfere with the Akers' real property rights.

On appeal, the Whites argue that the district court's compensatory damage award for resurfacing the road is not supported by substantial and competent evidence. They argue that historically tracked vehicles used the access road to reach Parcel A and that the Akers are not entitled to compensation because it was damaged as a result of similar use.

"This Court will not consider an argument not supported by cogent argument or authority." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 450, 299 P.3d 232, 257 (2013) (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010)). Because this Court does not search the record for error, and the party "alleging error has the burden of showing it in the record." *Kootenai Cnty. v. Harriman-Sayler*, 154 Idaho 13, 17, 293 P.3d 637, 641 (2012) (quoting *Miller v. Callear,* 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004)).

Here, because the Whites provide no citation to the record to support their claim that tracked machinery historically used the road, this Court will not entertain their argument that the court erred in granting the Akers $1,760 to repair the surface of the access road.[7] Accordingly, we affirm the district court's award for road repair.

### 2. Approach repair.

---

[7] Furthermore, even if there were evidence that tracked machinery historically used the access road, the district court found that Appellants drove tracked machinery back and forth on the road with the *intent* to destroy the road surface. The Whites have not refuted this factual finding on appeal. Thus, this is not a case where the servient estate has sustained incidental damage as a consequence of the dominant estate holder's exercise of its right of access. If we were to reach the merits of the Whites' argument as to this issue, we would not be inclined to rule in a fashion that would incentivize the willful destruction of property.

13

At trial, the Akers submitted an itemized invoice of the work performed and the costs to repair the approach and land outside of the easement after Appellants' willful trespass. The district court awarded the Akers $6,000 in compensatory damages for repair costs. The Whites argue that this was unwarranted because review of relevant testimony confirms that this work and accompanying cost was not on the easement road and was not attributable to any trespass. Again, the Whites offer no meaningful citation to the record to support their contention that the work was not attributable to their willful trespasses. They have simply directed us to a few lines of Dennis Akers' testimony in which he described how he had to re-seed certain areas that had turned to mud after the Appellants' excavation. However, this testimony in no way advances the Whites' argument that the grant of compensatory damages for approach repair was unwarranted. Accordingly, we affirm the district court's award to the Akers for road repair.

### 3. Pickup repair.

The district court found that the Akers were entitled to $1,939 to repair their pickup after Vernon Mortensen ran into it with a bulldozer. On appeal, the Whites argue that the damage award is unfounded because the Akers "were not permitted to use the easement in a manner that interfered with the use of the easement by owners of the dominant estate" and that "Akers is not entitled to recover damages that he caused by obstructing lawful use of the easement." Essentially, the Whites contend that Mortensen was justified in intentionally colliding with the Akers' pickup. Again, no authority is offered to support this argument. In the absence of citation to authority as to why the district court's award for compensatory damages regarding the Akers' pickup should be reversed, we affirm the award. We take this opportunity to reiterate that "[t]his Court strongly disfavors the resort to forceful self-help in resolving property disputes." *Weitz v. Green*, 148 Idaho 851, 864, 230 P.3d 743, 756 (2010).

## D. The district court did not err in trebling the Akers' damage award pursuant to I.C. § 6-202.

Pursuant to I.C. § 6-202, the district court ordered that the Akers' compensatory damages from Appellants' willful trespass be trebled, resulting in total damages of $51,008.55. The district court further ordered that Appellants were "jointly and severally liable" for the $51,008.55 awarded to the Akers. On second remand, the district court reinstated the award.

The Whites assert that the district court's decision to treble damages in this case was erroneous because it incorrectly applied the law to the facts, and the award was not based on

14

substantial and competent evidence. The Whites contend that the district court misapplied I.C. § 6-202 in this case because the "No Trespassing" signage was insufficient to invoke I.C. § 6-202 and because Appellants' trespasses were not "intentional and willful."

> Under I.C. § 6-202:

> Any person who, without permission of the owner, or the owner's agent, willfully and intentionally enters upon the real property of another person which property is posted with "No Trespassing" signs or other notices of like meaning, spaced at intervals of not less than one (1) notice per six hundred sixty (660) feet along such real property … is liable to the owner of such land … for treble the amount of damages which may be assessed therefor or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

The plain language of I.C. § 6-202 indicates that in order for a prevailing plaintiff to recover treble damages for trespass two conditions must be met: (1) the property trespassed on must be posted with "No Trespassing" signs or signs of like meaning at least every 660 feet and (2) the trespass must be "willful and intentional."[8] Here, the district court's decision to treble the Akers' damages under I.C. § 6-202 was proper because both statutory requirements were met.

### 1. The Akers' property was properly posted with "No Trespassing" signs.

The district court expressly found that "[p]laintiffs revoked defendants' permission to use the curved approach and the driveway west of Government Lot 2 in January 2002. Plaintiffs posted the same with "No Trespassing" signs within 660 feet of each other." Furthermore, the Whites themselves acknowledged that the Akers posted three "No Trespassing" signs along the access road. The Whites' brief recognizes that "[o]ne No Trespassing sign was posted were [sic] along the edge of the access road near the bog area, one was on the Akers' gate on the Akers' curved approach and one at the top of the hill near the section 19/24 corner."

Based on the court's factual findings and the Whites' concession, it is clear that the Akers properly posted "No Trespassing" signs along the access road, including the curved approach, in a manner consistent with the requirements of I.C. § 6-202. Thus, the issue becomes whether Appellants' trespass was "willful and intentional."

### 2. Appellants willfully and intentionally trespassed.

---

[8] Prior to legislative amendment in 2013, I.C. § 6-202 did not include the language "willfully and intentionally." *See* 2013 Idaho Sess. L. ch. 62, § 2, p. 138. However, this Court has historically read the "willful and intentional" requirement into the statute. *See Weitz*, 148 Idaho at 863, 230 P.3d at 755.

15

In discussing I.C. § 6-202, this Court previously adopted the following definitions of "intentional" and "willful." "'Intentional' is defined as '[d]one with the aim of carrying out the act' [and] '[w]illful' is defined as '[v]oluntary and intentional, but not necessarily malicious.'" *Weitz*, 148 Idaho at 864, 230 P.3d at 756 (citations omitted). In *Weitz*, a timber trespass case, this Court concluded that where a party knows that rights to property are in dispute, and that party nonetheless proceeds upon the property, that conduct is "willful and intentional" for the purpose of trebling damages under I.C. § 6-202. *Id*. In *Weitz*:

> After [Weitz] had received notice, from the Greens' attorney to [Weitz's] attorney, of the Greens' claim to the disputed property, and before the dispute had been resolved, [Weitz] hired an employee to re-enter the property and build a fence along the line where the old fence had stood, and in doing so the employee cut down one large tree and many small trees.

*Id*. at 863, 230 P.3d at 755. Ultimately, it was determined that the property did not belong to Weitz. *Id*. On appeal, this Court determined that Weitz "willfully and intentionally" trespassed because: (1) it was apparent from the facts that Weitz was not committing an innocent mistake and (2) Weitz had notice that the property was in dispute. *Id*. at 864, 230 P.3d at 756.

Here, our interpretation of "willfully and intentionally" from *Weitz* supports the district court's conclusion that Appellants' trespasses on the Akers' property were willful and intentional for the purposes of applying I.C. § 6-202. Appellants knew that the access road and the triangle area were in dispute. Prior to purchasing the land, the Mortensens knew that the former owners, the Peplinskis, had litigated with the Akers regarding the access road. Based on this, the district court found that the Mortensens knew there were claims against the Peplinskis by the Akers and that the Peplinskis dismissed their lawsuit without gaining any access rights. The Mortensens knew that the reduced price they paid for the land in Parcel A was due to the land's lack of access. During the period of disputed ownership, Vernon Mortensen cut the padlock to the Akers' gate and bulldozed the Akers' gate and fence posts, none of which were found to be located within the Appellants' easement. After the Akers commenced this suit in 2002, Appellants, after having been served, proceeded to excavate and regularly use the access road outside the boundaries of the easement. Thus, it is manifest that the Appellants' trespasses were not the product of an innocent mistake.

Under *Weitz*, the Appellants' trespasses were "willful and intentional" because the Akers' property was properly posted, Appellants knew that their right to use the access road and curved approach was disputed, and they nevertheless continued to use the disputed easement, removed

16

the Akers' gates and excavated the Akers' property.[9] Accordingly, the district court did not err in trebling the Akers' compensatory damages.

**E. The district court did not err in reinstating Sherrie Akers' damages for infliction of emotional distress.**

In its original damages order, the district court concluded that the Appellants caused Sherrie Akers significant emotional distress entitling her to $10,000 in compensatory damages to be paid jointly and severally by Appellants. On second remand, the district court reinstated its original order for emotional distress damages for the following reasons. First, Appellants were confrontational with Mrs. Akers on occasions when she sought to prevent their intentional trespasses on the Akers' property. Second, Mr. White bullied, threatened, and intimidated Mrs. Akers while she tried to assist the police in their investigation of Appellants' trespass. Third, a D.L. White Construction worker purposely ran its dump truck toward Mrs. Akers and within two feet of her body, acting as though he were going to run her over. Fourth, a D.L. White Construction worker threatened to run Mrs. Akers off her property and threatened to dig a three-foot ditch across the Akers' driveway to impede her use of the driveway. Fifth, Appellants actually impeded Mrs. Akers' use of the driveway by intentionally dumping dirt across the Akers' driveway for no purpose other than to block her ingress and egress, which prevented her from going to work. Finally, Mr. White consciously disregarded the district court's permanent injunction, restraining Appellants from trespassing on the Akers' real property, by entering the Akers' real property at night behind the Akers' home and successfully intimidated and frightened Mrs. Akers.

On appeal, the Whites argue that the district court's grant of emotional distress damages is clearly erroneous and should be reversed because the award is not supported by substantial and competent evidence of trespass or any other fact that constitutes violation of an independent legal duty. The Whites contend that this Court, in *Akers II*, held that "any liability on the claim for negligent infliction of emotional distress must be based upon a breach of a recognized legal duty" and in this case, there is no breach of a recognizable legal duty.

---

[9] We note that had Appellants had colorable title to the land at issue in this case, damages for willful and intentional trespass would not be warranted because "one who holds property under a colorable claim of ownership is not subject to an action of trespass by the true owner." *Walter E. Wilhite Revocable Living Trust v. Nw. Yearly Meeting Pension Fund*, 128 Idaho 539, 549, 916 P.2d 1264, 1274 (1996). However, Appellants had no colorable claim of right to the property and they had actual knowledge that their right of access was disputed.

In *Akers II*, we vacated the district court's award of emotional distress damages stating:

> In the instant case, the district court predicated the award of damages for negligent infliction of emotional distress on Appellants' malicious behavior while trespassing on the Akers' property. As we indicated in *Akers I*, the question of damages flowing from Appellants' conduct is inseparable from consideration of Appellants' easement rights. *Akers I*, 142 Idaho at 304, 127 P.3d at 207. Without a determination of Appellants' easement rights, it is impossible to determine the scope of Appellants' trespass. Therefore, we vacate the district court's award of damages for negligent infliction of emotional distress.

147 Idaho 39, 48, 205 P.3d 1175, 1184 (2009). Because Appellants' easement rights are now clearly established and it is clear that Appellants willfully and intentionally trespassed on the Akers' property we may now uphold the district court's award of emotional distress damages.

"While Idaho recognizes the tort of negligent infliction of emotional distress … there must be a breach of a recognized legal duty in order to support a claim for negligent infliction of emotional distress." *Nation v. State, Dept. of Corr.*, 144 Idaho 177, 191, 158 P.3d 953, 967 (2007). Additionally, an award based on negligent infliction of emotional distress cannot be upheld without an accompanying injury to the plaintiff. *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989) ("It is beyond dispute that in Idaho no cause of action for negligent infliction of emotional distress will arise where there is no physical injury to the plaintiff.").

In this case, Appellants breached their recognized legal duty to abstain from repeatedly and intentionally trespassing on the Akers' real property. Appellants' trespasses were so egregious that they can only be described as an effort to bully and intimidate the Akers. As a consequence of these repeated and intentional trespasses, Mrs. Akers suffered physical manifestations of emotional distress including anxiety, stomachaches, migraines, and sleeplessness. Accordingly, because Appellants breached their recognized legal duty to abstain from trespassing, and those trespasses resulted in physical injury to Mrs. Akers, the district court did not err in reinstating the award of $10,000 for infliction of emotional distress.

**F. The district court did not err in reinstating punitive damages against the Whites.**

Originally, the district court concluded that a punitive damage award of $30,000 would likely prevent the Whites from engaging in like conduct in the future. On second remand, the district court reinstated the initial award. In reinstating the punitive damage award, the district court concluded that the Whites engaged in a "plethora" of conduct that warranted punitive damages. Specifically, the district court concluded that the Whites visited upon the Akers

"emotional violence, intimidation and threats … *even throughout the year long court trial*" and that Mr. White consistently intimidated the Akers for over a decade during this litigation. In arriving at a punitive award of $30,000 the district court found that:

> David White and D.L. White Construction, Inc., has [sic] violated and disregarded Kootenai County ordinances and the orders of this Court for pecuniary gain, specifically to increase the value of his land development project. In his actions, testimony and demeanor he has shown a conscious disregard and disrespect for the law. He has harmed innocent North Idaho landowners, including [the Akers], by this conscious disregard for the law. As such, it is highly likely that he will continue to harm [the Akers] and other Idaho landowners unless he is deterred from engaging in like conduct in the future.

On second remand, the Whites argued to the district court that it failed to comply with the evidentiary standard of I.C. § 6-1604(1). In response, the district court stated, "[i]f in fact this Court seven years ago failed to mention that standard, it does so now. This court specifically finds that Akers have proven, by clear and convincing evidence, oppressive, fraudulent, malicious *and* outrageous conduct" by the Whites.

On appeal, the Whites argue that the district court's punitive damage award cannot be upheld because the record does not demonstrate by clear and convincing evidence an extreme deviation from reasonable standards of conduct. The Whites argue that the district court erred by attributing the acts of one defendant to the other in assessing punitive damages. Further, the Whites assert that there is scant evidence in the record identifying specific acts by Mr. White that form the basis of the trial court's punitive damage award. Finally, the Whites argue that the district court's conclusion that the requirements of I.C. § 6-1604(1) were satisfied is without a factual basis.

The Whites properly assert that I.C. § 6-1604(1) provides the appropriate evidentiary standard for cases involving punitive damages. *See Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 501, 95 P.3d 977, 983 (2004) ("A party seeking punitive damages must adhere to the requirements of I.C. § 6–1604."). Idaho Code § 6-1604(1) provides that "[i]n any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted."[10]

---

[10] The "clear and convincing" evidentiary standard set forth in I.C. § 6-1604(1) was not applicable to all of the Whites' conduct in this case. In 2003, the Legislature made multiple amendments to I.C. § 6-1604. *See Weinstein v.*

Punitive damage awards, "are not favored in the law and therefore should be awarded only in the most unusual and compelling circumstances." *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 904–05, 665 P.2d 661, 668–69 (1983). However, "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Weinstein*, 149 Idaho at 333, 233 P.3d at 1255 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996)). Particularly applicable in this case, "punitive damages are appropriate in a trespass action when the defendant acted in a manner which was outrageous, unfounded, unreasonable, and in conscious disregard of the plaintiff's property rights." *Walter E. Wilhite Revocable Living Trust*, 128 Idaho at 549, 916 P.2d at 1274.

Here, the record indicates that Mr. White bullied, threatened, and intimidated Mrs. Akers on a regular basis for a significant period of time, during which he wilfully trespassed on the Akers' property. Additionally, the record shows that Mr. White consciously disregarded the district court's permanent injunction when he knowingly trespassed on the Akers' property at night, thirty feet from their home, in an effort to frighten and intimidate the Akers. Further, Mr. White deceived police officers trying to investigate Appellants' trespass on the Akers' property. Also, Mr. White intentionally dug up the Akers' road to the back of their property in an effort to block their access. Lastly, the court specifically found that Mr. White, "in his actions, testimony and demeanor … has shown a conscious disregard and disrespect for the law."[11]

Based on the foregoing, we find that substantial, competent evidence supports the district court's finding that Mr. White acted in a manner which was oppressive, fraudulent, wanton, and outrageous with a conscious disregard of the Akers' rights. Thus, the district court did not err in

---

*Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 329, 233 P.3d 1221, 1251 (2010). One amendment "changed the standard of proof by amending subsection (1) to provide that conduct required to support an award of punitive damages must be proved by clear and convincing evidence rather than by a preponderance of the evidence." *Id*. The amendment requiring "clear and convincing" evidence explicitly only applies to "causes of action that accrue after July 1, 2003." *Id*. Prior to the amendment, punitive damages could be awarded based upon proof by a *preponderance of the evidence* that the defendant "acted oppressively, fraudulently, wantonly, maliciously or outrageously." *Weaver v. Stafford*, 134 Idaho 691, 699–700, 8 P.3d 1234, 1242–43 (2000), *overruled on other grounds by Weitz*, 148 Idaho at 862, 230 P.3d 754. The most significant conduct that the district court considered in awarding punitive damages occurred prior to the effective date of the amendments to I.C. § 6-1604.

However, because the district court applied the elevated burden of proof, rather than attempting to parse the record for evidence of conduct occurring before and after July 1, 2003, we have evaluated the record to determine whether substantial, competent evidence supports the district court's findings.

[11] Although not related to his trespass, the district court observed that Mr. White raised his voice in anger and yelled at the Akers during the trial. Mr. White also yelled at the Akers during a recess in the courthouse hallway in contravention of an order prohibiting the parties from speaking with each other during trial.

reinstating the Akers' punitive damage award in the amount of $30,000 to be paid by the Whites jointly and severally.

**G. The district court properly imposed attorney fees under I.C. § 6-202; however, attorney fees awarded under I.C. § 6-202 must be apportioned.**

The district court originally awarded the Akers $105,534.06 in attorney fees pursuant to I.C. § 6-202 and later reinstated the award on second remand. The court concluded that fees were warranted under I.C. § 6-202 because the Akers were the prevailing party, they properly posted the access road, and Appellants' trespasses were willful and intentional. In addition to the reinstatement of $105,534.06 for prior attorney fees, the district court also imposed $22,000 in fees related to the second remand.

The Whites argue that the trial court erroneously reinstated $105,534 in fees from the original decision and erroneously added $22,000 in fees claimed on second remand. The Whites' primary argument is that this Court should vacate the entire award because I.C. § 6-202 does not apply in this case because the Akers' "No Trespassing" signage was inadequate and Appellants' trespasses were not willful and intentional. Alternatively, the Whites contend that if I.C. § 6-202 applies, the fees awarded below need to be apportioned because I.C. § 6-202 only allows for the recovery of fees in prosecuting trespass, not quieting title, seeking emotional distress damages or punitive damages. The Whites rely on *Bumgarner v. Bumgarner*, 124 Idaho 629, 862 P.2d 321 (Ct. App. 1993), in making their apportionment argument.

As addressed above, the Akers posted the access road with "No Trespassing" signs in conformity with I.C. § 6-202 and Appellants' trespasses were willful and intentional. Accordingly, because the Akers were a prevailing plaintiff, the attorney fee provision of I.C. § 6-202 entitles the Akers an award of attorney fees. Thus, the issue becomes whether the attorney fees granted by the district court under I.C. § 6-202 must be apportioned. We conclude that they must.

A trial court is authorized to award attorney fees only as provided by statute or contract. I.R.C.P. 54(e)(1). Under I.C. § 6-202, where a defendant willfully and intentionally trespasses on properly posted real property, that defendant is liable to the property owner "for treble the amount of damages … plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails." The plain language of I.C. § 6-202 "mandates the award of a reasonable attorney fee to a plaintiff who prevails in an action brought under the statute." *Bubak v. Evans*, 117 Idaho 510, 513, 788 P.2d 1333, 1336 (Ct. App.

21

1989). Therefore, under I.C. § 6-202 a prevailing plaintiff may only be awarded attorney fees "reasonably incurred in prosecuting the trespass action upon which he prevailed." *Bumgarner*, 124 Idaho at 644, 862 P.2d at 336.

Because I.C. § 6-202 only provides an award of attorney fees for those fees incurred in prosecuting the trespass under the statute, the district court erred in failing to apportion its award of attorney fees to the Akers. Accordingly, we vacate the district court's award of attorney fees and remand the issue back to the district court for apportionment.

## H. A new district judge is not necessary on remand.

The Whites cite our decision in *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 424, 283 P.3d 728, 741 (2012), and argue that because this case has such a long and complex history, a new judge would provide a much needed fresh perspective and would eliminate any concern of bias on remand.

*Capstar* involved an easement dispute in which Capstar Radio sought a declaratory judgment that it had an easement over the Lawrence's real property. 153 Idaho at 415, 283 P.3d at 732. Early in the proceedings, Capstar Radio moved for summary judgment, which the district court granted. *Id*. The Lawrences appealed and we vacated the district court's grant of summary judgment and remanded the case. *Id*. On remand, Capstar Radio renewed its motion for summary judgment, and the Lawrences filed a motion to disqualify the district judge. The judge declined to disqualify himself and ultimately granted Capstar Radio's renewed motion for summary judgment. *Id*. at 415–16, 283 P.3d at 732–33. Again, the Lawrences appealed to this Court and again we vacated the district court's grant of summary judgment. *Id*. at 425, 283 P.3d at 742. In addition to vacating the grant of summary judgment, despite our determination that the district judge did not err in refusing to disqualify himself, we concluded that on second remand a new district judge should to be appointed to "provide a much needed fresh perspective" and to eliminate any concerns relating to the repeated assertions of judicial bias. *Id*. at 424, 283 P.3d at 741.

Here, the Whites argue that the facts of this case are so similar to *Capstar* that the appointment of a new district judge on remand is warranted. We disagree for two primary reasons. First, unlike *Capstar*, which was a case reviewed on summary judgment, this case proceeded to a court trial where nearly two weeks of testimony was heard and the Whites were able to present their case in full. Second, unlike *Capstar*, which was remanded *for a trial* on the

easement theories of easement implied by prior use, easement by necessity, and prescriptive easement, the proceedings on remand in this case will address an extremely narrow issue, requiring only that the district court apportion its award of attorney fees. Accordingly, we will not order the appointment of a new district judge on remand.

## IV. CONCLUSION

We affirm the district court's location of Appellants' easement through the Akers' Parcel B. Additionally, the Court affirms the district court's: (1) compensatory damage award; (2) decision to treble the Akers' compensatory damage award; (3) reinstatement of Sherrie Akers' emotional distress award; and, (4) reinstatement of punitive damages. However, the district court's judgment granting the Akers the entirety of their attorney fees pursuant to I.C. § 6-202 must be vacated and remanded for apportionment. We award costs on appeal to the Akers.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.