# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41604

KARA ALEXANDER,

    Plaintiff-Respondent,

and

ROBBY ROBINSON,

    Plaintiff,

v.

VIANNA STIBAL, an individual, NATURE PATH INC., an Idaho corporation, and THETAHEALING INSTITUTE OF KNOWLEDGE,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, May 2015 Term

2016 Opinion No. 17

Filed: February 26, 2016

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. William H. Woodland, Senior District Judge.

The district court's order denying Stibal's motion for JNOV on the contract claim is <u>reversed</u>. The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Thompson Smith Woolf Anderson Wilkinson & Birch, PLLC, Idaho Falls, for appellants. Michelle Wodynski argued.

Pike Herndon Stosich & Johnston, PA, Idaho Falls, for respondent. Alan Fred Johnston argued.

---

HORTON, Justice.

This appeal arises from a case in which Kara Alexander sued Vianna Stibal for fraud, breach of contract, and punitive damages. A jury awarded Alexander $111,000 on her contract claim, $17,000 on the fraud claim, and $500,000 in punitive damages. During the trial, the district court denied Stibal's motion for a directed verdict on the fraud and breach of contract claims. Following trial, Stibal moved for a new trial and for judgment notwithstanding the verdict (JNOV). The district court denied these post-trial motions, but reduced the punitive damages award to $384,000 pursuant to Idaho Code section 6-1604. On appeal, Stibal challenges

1

the district court's rulings on the contract, fraud, and punitive damages issues. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stibal is the owner and operator of Nature Path, Inc. and the ThetaHealing Institute of Knowledge (THInK). Stibal teaches ThetaHealing, a self-discovered methodology that she claims results in healing and general health. At the times relevant to this case, Stibal operated out of the Idaho Falls area, but she markets her products, trainings, and classes worldwide. Students can take classes from Stibal and, following a course of study, be authorized to teach her methods. Alexander and her significant other, Robby Robinson, were among Stibal's students. Alexander began studying ThetaHealing in New York in 2006, taking classes from an instructor licensed by Stibal. Alexander's educational background included a bachelor's degree for which she "double-majored in art and biology as a medical illustrator" and some graduate work in neuroscience. Before temporarily relocating to Idaho Falls to study with Stibal, Alexander was self-employed as a medical illustrator. At the time of trial, Robinson worked part-time as a pilot.

In the beginning of 2008, THInK announced that it would offer a newly-created doctoral degree in ThetaHealing. The degree was promoted on THInK's webpage, the yellow pages, online course descriptions, email, and online videos: it was referred to as a "PhD," "Doctorate of Ministry," and a "Doctorate." Alexander and Robinson were already in Idaho Falls taking classes from Stibal at this time. Following the announcement that the doctoral degree was available, they decided to take additional classes to obtain the degree. Eventually, Alexander and Robinson were awarded plaques announcing their receipt of "a Doctorate of Ministry in ThetaHealing." Alexander testified that she took three additional courses in the summer of 2008 in order to obtain the doctorate degree.

In the fall of 2008, students of ThetaHealing, including Alexander and Robinson, began to question the validity of their doctoral degrees. In November of 2011, Alexander and Robinson filed a complaint against Stibal, alleging breach of contract and fraud. Stibal moved for summary judgment, which the district court denied.[1] Alexander and Robinson moved for leave to amend their complaint to include a claim for punitive damages, which was also denied. After a new district judge was assigned to the case, they renewed their motion to amend the complaint to

---

[1] When denying the motion for summary judgment, the district court held that Alexander could only claim damages incurred after THInK announced the doctorate program.

include a prayer for punitive damages. This motion was granted. The jury trial began on July 23, 2013. Because Robinson was unable to attend the trial due to a work-related scheduling conflict, the district court dismissed his claims. The issues at trial before the jury, as framed by Alexander's complaint, were whether Stibal: (1) fraudulently misrepresented instances of healing, and (2) breached a contract with Alexander.

Alexander's breach of contract claim alleged that Stibal "breached the contract by not providing a valid doctorate degree to" Alexander. Alexander testified that Stibal said THInK was in "the process of accreditation." Stibal testified that she informed her students that the school was not accredited and characterized the doctorate degree as a "little award" to show students that their work was appreciated. Stibal's daughter, Bobbi Lott, also testified that students were informed that the program was not accredited.

Alexander's complaint alleged four fraudulent factual assertions by Stibal: (1) "that she healed herself from cancer;" (2) "that she pulled herself out of a coma in Italy;" (3) "that she healed herself from heart disease;" and (4) "that her healing abilities can make liquids in containers, such as gasoline in a vehicle or beverages in a refrigerator[,] refill themselves." At trial, there was evidence of other purportedly fraudulent statements made by Stibal. These included Stibal's representations that she was in good health and her claim to have healed her grandson's lung.

At trial, a great deal of evidence was presented regarding Stibal's claim to have cured herself of cancer. By Stibal's account, in 1995 she was diagnosed with cancer in her right femur and was cured using the ThetaHealing technique. Stibal claimed that her doctors told her that her leg might need to be amputated, she needed to undergo chemotherapy, and she had sarcoma and possibly lymphoma. Stibal's medical records were introduced at trial. These records include the results of a biopsy which indicated a suspicion of cancer but were not diagnostic. Alexander's expert witness, Dr. Christian Shull, testified that the medical records reflect that Stibal was not definitively diagnosed with any form of cancer and that it would have been inappropriate for any doctor to advise her to undergo chemotherapy or suggest amputating the leg. Stibal's expert witness, Dr. Phillip Beron, also testified that the records did not show a diagnosis and that it would not have been appropriate to administer chemotherapy or amputate the leg. Stibal's ex-husband, Blake McDaniel, testified that Stibal was not definitively told that she had cancer, that

3

her leg slowly healed, and that he had confronted her about her claim to have been diagnosed with cancer.

The district court denied Stibal's motion for a directed verdict with regard to Alexander's claims of fraud and breach of contract. The jury awarded Alexander $17,000 on her fraud claim, $111,000 for breach of contract, and $500,000 in punitive damages. On August 5, 2013, the district court entered a judgment of $628,000 in Alexander's favor. Stibal moved for a new trial and for JNOV. The district court denied these post-trial motions, but reduced the punitive damage award to $384,000. Stibal timely appealed.

## II. STANDARD OF REVIEW

"When a court reviews a motion for j.n.o.v. under I.R.C.P. 50(b), the motion is treated as a delayed motion for a directed verdict and the same standard is applied for both." *Olson v. EG&G Idaho, Inc.*, 134 Idaho 778, 781, 9 P.3d 1244, 1247 (2000). "In reviewing a decision to grant or deny a motion for directed verdict or a judgment notwithstanding the verdict, this Court applies the same standard as that applied by the trial court when originally ruling on the motion." *Waterman v. Nationwide Mut. Ins. Co.*, 146 Idaho 667, 672, 201 P.3d 640, 645 (2009). This Court determines:

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 509, 328 P.3d 480, 489 (2014) (quoting *Enriquez v. Idaho Power Co.*, 152 Idaho 562, 565, 272 P.3d 534, 537 (2012)).

"A trial court has broad discretion in ruling on a motion for a new trial." *Blizzard v. Lundeby*, 156 Idaho 204, 206, 322 P.3d 286, 288 (2014). When considering a claimed abuse of discretion, we consider:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standard applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Id.* (quoting *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991)). "The trial court is in a far better position to weigh the demeanor, credibility, and testimony of witnesses, and the

persuasiveness of all the evidence. Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to 'weigh' it as the trial court can." *Quick v. Crane*, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986).

"The standard of review for punitive damages is to determine if the trial court abused its discretion in allowing the jury to consider punitive damages." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 430, 95 P.3d 34, 48 (2004). The decision to award punitive damages is a factual question for the jury. *Id.* This Court conducts "a de novo review of the constitutionality of the amount of a punitive damages award." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 338, 233 P.3d 1221, 1260 (2010).

### III. ANALYSIS

On appeal Stibal argues that the district court erred by: (1) denying her motions for directed verdict, JNOV, and new trial on the contract claim; (2) denying her motions for directed verdict, JNOV, and new trial on the fraud claim; (3) permitting Alexander to amend her complaint to include a request for punitive damages; (4) denying Stibal's motion for a new trial on punitive damages; (5) failing to properly reduce the award of punitive damages; and (6) failing to grant a new trial based upon other claimed errors occurring during trial. We address these issues in turn.

**A. The district court erred by denying Stibal's motion for JNOV on the breach of contract claim.**

The district court denied Stibal's motions for a directed verdict, JNOV, and new trial on the breach of contract claim. Because our decision regarding the district court's denial of Stibal's motion for JNOV is dispositive, we do not reach the parties' remaining arguments concerning the contract claim.

When denying Stibal's motion for JNOV, the district court found that the evidence clearly showed THInK was not accredited in any fashion and that Stibal marketed the doctoral degree as something more than a mere award. The district court found that, although Alexander acknowledged that the degree was not the sort of degree held by a college professor, substantial evidence showed Stibal promised to deliver a "valid" doctoral degree.

"An agreement that is so vague, indefinite and uncertain that the intent of the parties cannot be ascertained is unenforceable, and courts are left with no choice but to leave the parties as they found them." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007) [*Griffith I*]. "[W]here a contract is too vague, indefinite, and uncertain as to its essential

5

terms, and not merely ambiguous, there has been no 'meeting of the minds' which is necessary for contract formation and courts will 'leave the parties as they found them.' " *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 551, 314 P.3d 593, 606 (2013) (quoting *Griffith I*, 143 Idaho at 737, 152 P.3d at 608). Thus, "[a] court cannot enforce a contract unless it can determine what it is." *Id.* at 547, 314 P.3d at 602 (quoting 1 Arthur L. Corbin, *Corbin on Contracts* § 4.1 (rev. ed. 1993)). However, "[m]ere disagreement between the parties as to the meaning of a term is not enough to invalidate a contract entirely; the applicable standard is reasonable certainty as to the material terms of a contract, not absolute certainty relative to every detail." *Griffith I*, 143 Idaho at 737, 152 P.3d at 608. The law does not favor the destruction of contracts because of uncertainty. *Id.*

For purposes of reviewing the motion for JNOV, we accept the truth of Alexander's description of the nature of the degree that she was offered. The difficulty is that Alexander's description of the type of degree she understood she was to receive is vague at best. Alexander understood that the title of the degree was "Doctorate of Ministry in ThetaHealing." However, Alexander was unable to describe the nature of the degree that she would receive beyond her belief that it would be "valid" and not merely honorary based upon Stibal's representation that THInK was "in the process of accreditation." Alexander's testimony clearly established that she understood that the degree was not the sort of academic degree that one might obtain from a university. Given the vagueness of the terms which formed the basis for Alexander's contract claim, there was simply no substantial evidence which might support a finding that there was the requisite meeting of the minds to support the formation of a contract for something other than a certification that Alexander had mastered the art of ThetaHealing. Because the terms of the purported contract were too uncertain for a court to enforce, we conclude that the district court erred in denying Stibal's motion for JNOV on the contract claim.

## B. The district court did not err by denying Stibal's motions for directed verdict, JNOV and new trial on Alexander's fraud claim.

The district court denied Stibal's motion for a directed verdict seeking dismissal of Alexander's claim that Stibal fraudulently represented instances of healing. Following the trial, the district court denied Stibal's motions for JNOV and a new trial on the fraud claim. On appeal, Stibal argues that Alexander failed to prove all the elements of fraud by clear and convincing evidence. Specifically, Stibal argues that Alexander failed to present clear and convincing evidence of all the elements of fraud with regard to three alleged misrepresentations:

Stibal's recovery from the coma in Italy, curing herself of heart disease, and curing herself of cancer.

As a preliminary matter, we must decide which of Stibal's statements may be considered in supporting Alexander's claim of fraud. Idaho Rule of Civil Procedure 9(b) requires fraud to be pleaded with particularity: "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." "This rule requires the alleging party to specify what factual circumstances constitute fraud or mistake." *Brown v. Greenheart*, 157 Idaho 156, 164, 335 P.3d 1, 9 (2014). Alexander's complaint alleged four fraudulent assertions by Stibal: (1) "that she healed herself from cancer," (2) "that she pulled herself out of a coma in Italy," (3) "that she healed herself from heart disease," and (4) "that her healing abilities can make liquids in containers, such as gasoline in a vehicle or beverages in a refrigerator[,] refill themselves." At trial, Alexander presented evidence of other purportedly fraudulent statements by Stibal, including her claims to be in good health and that she healed her grandson's lung. For purposes of reviewing the district court's rulings on Stibal's motions relating to the fraud claim, we will only consider those statements advanced in Alexander's complaint. Further, because of the general nature of the jury's verdict regarding the fraud claim,[2] we will only address one of the allegedly fraudulent assertions—that Stibal cured herself of cancer.

The nine elements of a fraud claim are: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the

---

[2] The jury's verdict regarding the fraud claim consisted of answers to the following questions:

> QUESTION NO. 5: Did any of the Defendants commit fraudulent misrepresentation against the Plaintiff regarding Vianna Stibal's claims of healing?
>
> ANSWER: Yes
>
> QUESTION NO. 6: In what amount was the Plaintiff damaged by the Defendants' fraudulent misrepresentation regarding healing?
>
> ANSWER: $17,000.00

In *Rockefeller v. Grabow*, 139 Idaho 538, 543, 82 P.3d 450, 455 (2003), we considered a similar verdict:

> In this case, the jury rendered a general verdict, answering "yes" to the question, "Did Rockefeller breach his fiduciary duty to the Grabows?" The jury was not asked to determine whether Rockefeller had breached his fiduciary duty in each or all of the ways alleged by the Grabows. "The verdict being general, it is impossible to determine the basis on which the jury arrived at it." *Brown v. Hardin*, 31 Idaho 112, 116, 169 P. 293, 295 (1917). A general verdict is not a determination that all of the claims or theories upon which it could be based have been proven. It is merely a determination that at least one of such claims or theories has been proven. Therefore, we will uphold a general jury verdict if there is any theory upon which it can be based.

7

hearer; (8) justifiable reliance; and (9) resultant injury." *Bank of Commerce v. Jefferson Enters., LLC*, 154 Idaho 824, 833, 303 P.3d 183, 192 (2013).

**1. The district court did not err in denying Stibal's motions for directed verdict and JNOV.**

The district court denied Stibal's motion for a directed verdict, apparently reasoning that there were factual issues in dispute on the fraud issue. Later, the district court also denied Stibal's motion for JNOV on the fraud claim with regard to the cancer story, finding sufficient evidence of each element of fraud. As previously noted, when reviewing the district court's decision on these motions, we consider whether reasonable minds could conclude that all elements of fraud were established after drawing every legitimate inference in favor of Alexander.

First, there was substantial evidence that Stibal made a statement or representation of fact that she cured herself of cancer. In her book *Go Up And Seek God*, Stibal states that she was diagnosed with cancer in her right femur in 1995 and cured herself instantaneously by means of ThetaHealing. Stibal further claimed that her doctors told her that the leg might need to be amputated, she needed to undergo chemotherapy, and that she had sarcoma and possibly lymphoma.

Second, there was evidence produced at trial that Stibal's claim that she had been diagnosed with cancer was false. Her medical records contained biopsy results that indicated a suspicion of cancer, but were not diagnostic. Alexander's expert witness, Dr. Shull, testified that the medical records showed that Stibal was not definitively diagnosed with lymphoma, sarcoma, or any other form of cancer and that it would not have been appropriate for a physician to tell her to undergo chemotherapy or suggest amputating the leg. Likewise, Stibal's expert witness, Dr. Beron, testified the records did not evidence a diagnosis and that it would not have been appropriate to start chemotherapy or amputate the leg. Stibal's ex-husband testified that Stibal was not definitively told that she had cancer, that her leg slowly healed, and that he had confronted her regarding her claim to have been diagnosed with cancer.

Third, there was evidence that the cancer statement was material. Alexander testified that without Stibal's claim to have cured herself of cancer and similar healing claims, she "would not . . . have taken one theta class, not one theta session."

8

Fourth, given the testimony from the expert witnesses and her ex-husband, there was substantial evidence that Stibal knew her representation to have instantaneously cured her cancer was false.

Fifth, there is substantial evidence that Stibal intended for hearers to rely on the representation that she had cured herself of cancer. Stibal used the claim to promote the instantaneous healing effects of ThetaHealing to induce people to take classes.

Sixth, there is substantial evidence that Alexander was ignorant of the falsity of Stibal's cancer claim. Her testimony clearly reflects that she believed Stibal's claims on her website and in her book.

Seventh, there was substantial evidence of Alexander's reliance on Stibal's claim regarding cancer. Alexander testified that the cancer story was "[e]xtremely important" to ThetaHealing and that she relied on Stibal's account when making her decision to take ThetaHealing classes.

The eighth element, that of justifiable reliance, is the most difficult to evaluate, given the inherent improbability of Stibal's claim. Our determination that sufficient evidence exists when every legitimate inference is made in favor of Alexander serves to underscore the deferential standard of review that we are constrained to follow on appeal.

> Under section 544 of the Restatement (Second) of Torts, "[t]he recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out." "Whether the recipient has reason for this belief depends upon the circumstances under which the statement was made, including the fact that it was made for the purpose of inducing the recipient to act in reliance upon it and the form and manner in which it was expressed." Restatement (Second) of Torts § 544, comment a (1965).

*Gray v. Tri-Way Const. Servs., Inc.*, 147 Idaho 378, 386, 210 P.3d 63, 71 (2009). Alexander testified that the cancer claim was important to her decision to take Stibal's classes. Evidently, Stibal was persuasive in her claims. Alexander was just one of many who apparently believed Stibal's claims, as her classes were widely attended by people from all over the world. Stibal wrapped her claim of healing powers in scientific terms, explaining that the healing power was a function of theta wave brain activity. We conclude that there was substantial evidence that Alexander justifiably relied on Stibal's representations.

Ninth, and finally, there was substantial evidence of resultant injury. Alexander's testimony establishes that she took classes in ThetaHealing, traveling from the East Coast to

Idaho Falls to take classes from Stibal so that she could learn to heal in the manner that Stibal claimed to have mastered. As a result, she incurred significant expenses and paid substantial sums to Stibal for the classes in ThetaHealing.

Because substantial evidence was presented as to all nine elements of fraud which reasonable minds could accept, the district court did not err in denying Stibal's motions for directed verdict and JNOV.

### 2. The district court did not abuse its discretion in denying Stibal's motion for a new trial.

The district court denied Stibal's motion for a new trial on the fraud claim. Stibal's claim of error on appeal as to this ruling primarily relies on the same claims we have just addressed, namely that Alexander failed to prove the elements of fraud by clear and convincing evidence.

"There is a qualitative difference between a trial judge's role in deciding whether a new trial is justified based on the insufficiency of the evidence under Rule 59(a)(6), and whether a new trial is justified based on the amount of the jury's award of damages under Rule 59(a)(5) . . . ." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 749, 274 P.3d 1256, 1264 (2012) (quoting *Harger v. Teton Springs Golf & Casting, LLC*, 145 Idaho 716, 718, 184 P.3d 841, 843 (2008)). As Stibal does not challenge the amount of fraud damages, we do not address Rule 59(a)(5).

Under Rule 59(a)(6) a court may grant a new trial for "[i]nsufficiency of the evidence to justify the verdict." "Under Rule 59(a)(6), the trial judge *must* weigh the evidence and determine (1) whether the verdict is against his or her view of the clear weight of the evidence; and (2) whether a new trial would produce a different result." *Id.* (emphasis original) (quoting *Harger*, 145 Idaho at 719, 184 P.3d at 844).

The district court followed the requirements of Rule 59(a)(6). The district court weighed the evidence and found that Stibal's claim to have healed herself of cancer was proven to be a fraudulent misrepresentation by clear and convincing evidence. Next, the district court determined that, in its view, "a different verdict is unlikely." Based upon these findings, Stibal has not demonstrated that the district court abused its discretion when it denied her motion for a new trial.

10

**C. We affirm an award of punitive damages, but the amount of punitive damages must be reduced.**

Stibal challenges the district court's (1) decision to submit punitive damages to the jury; (2) denial of her motions for JNOV and new trial regarding punitive damages; and (3) the amount by which the district court reduced punitive damages.

**1. The district court did not abuse its discretion in submitting punitive damages to the jury.**

The district court allowed Alexander to amend her complaint to seek punitive damages, referencing the "commercial atmosphere" of Stibal's enterprise. On appeal, Stibal argues that the district court abused its discretion in permitting the amendment because ThetaHealing is entitled to protection as a religion.

"I.C. § 6-1604(1) provides the appropriate evidentiary standard for cases involving punitive damages." *Akers v. D.L. White Const., Inc.*, 156 Idaho 37, 52, 320 P.3d 428, 443 (2014). Regarding leave to amend a complaint, Idaho Code section 6-1604(2) provides:

> [A] party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a *reasonable likelihood* of proving facts at trial sufficient to support an award of punitive damages.

The standard for an actual punitive damage award is in Idaho Code section 6-1604(1):

> In any action seeking recovery of punitive damages, the claimant must prove, by *clear and convincing evidence*, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

Such punitive damage awards "are not favored in the law . . . ." *Akers*, 156 Idaho at 53, 320 P.3d at 444. However, punitive damages may be imposed to further the State's legitimate interests in punishing and deterring unlawful conduct. *Id.*

When considering Alexander's motion to amend her complaint, the question before the district court was whether there was a "reasonable likelihood" that Alexander would be able to "prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct." I.C. § 6-1604(1), (2). As Stibal points out, the district court initially denied Alexander's motion, reasoning that it would be difficult to establish a harmful state of mind because faith is integral to ThetaHealing. The new district judge assigned to the case granted Alexander's renewed motion to amend her complaint, reasoning that the "commercial

11

atmosphere" of ThetaHealing was such that punitive damages might be justified. The district court later indicated that the decision rested, in part, upon the medical evidence which showed that Stibal had not been diagnosed with cancer.

Idaho Code section 6-1604 does not prohibit the trial court from reconsidering earlier rulings. Instead, it provides that the trial court cannot permit a party to amend its pleadings to advance a claim for punitive damages until satisfied that a sufficient quantum of evidence exists to support the claim. In this case, the district court did just that. The district court ruled that there was a reasonable likelihood that Alexander could prove oppressive, fraudulent, or outrageous conduct in light of the evidence presented that Stibal vigorously marketed her business based upon claims of instantaneous healing. We have stated that one situation where punitive damages are appropriate "is when the defendant is engaged in deceptive business practices operated for profit posing danger to the general public." *Umphrey v. Sprinkel*, 106 Idaho 700, 710, 682 P.2d 1247, 1257 (1983). The district court did not abuse its discretion in granting Alexander leave to amend her complaint to include a claim for punitive damages.

### 2. The district court did not err in denying Stibal's motion for JNOV and did not abuse its discretion in denying Stibal's new trial motion.

The district court denied Stibal's post-trial motions for JNOV and new trial on the punitive damages claim. The district court weighed the evidence and found the jury's award of punitive damages was necessary to deter Stibal's false claims that she used to "vigorously market" her ThetaHealing classes. The district court stated Stibal's claim to have cured herself of cancer "was indisputably false" and that "[e]ven if she were merely enthusiastic in her own beliefs, she was most reckless in her preying on susceptible people." On appeal, Stibal argues that the evidence was insufficient to provide clear and convincing evidence supporting an award of punitive damages. She challenges the jury's findings based on conflicting evidence. For instance, as to the knowledge of falsity elements, she argues that a layperson could reasonably believe she had cancer if she had a growth similar to Stibal's and that Alexander should have known Stibal could not instantaneously cure ailments.

The parties' arguments on this subject largely deal with the weight of the evidence. However, it is not this Court's role to weigh the evidence; rather, our duty is to apply the standards of review governing JNOV and new trial motions. Idaho Code section 6-1604(1) authorizes an award of punitive damages for fraudulent conduct. Thus, in light of our decision to

12

affirm the district court's denial of Stibal's motion for JNOV as to the fraud claim, we affirm the district court's denial of her similar motion regarding the punitive damages claim.

Regarding the new trial motion, the district court correctly weighed the evidence and determined the verdict was not against the clear weight of the evidence. Implicit in the district court's decision is its view that a new trial would not produce a different result. *Borah v. McCandless*, 147 Idaho 73, 80, 205 P.3d 1209, 1216 (2009) (holding that this Court may recognize implicit factual findings of the district court that are supported by substantial and competent evidence). We are unable to conclude that the district court abused its discretion by denying Stibal's motion for a new trial on the punitive damages issue.

### 3. The award of punitive damages must be reduced.

The jury awarded $500,000 in punitive damages, but the district court reduced the amount of the award to $384,000 pursuant to Idaho Code section 6-1604(3). The amount of $384,000 represented three times the sum of the jury's breach of contract and fraud damage awards, which equaled $128,000.[3] Our reversal of the district court's decision regarding Stibal's motion for JNOV on the contract claim necessitates further analysis.

Idaho Code section 6-1604(3) limits the amount of punitive damages that may be awarded as follows: "No judgment for punitive damages shall exceed the greater of two hundred fifty thousand dollars ($250,000) or an amount which is three (3) times the compensatory damages contained in such judgment." Since Alexander's compensatory damages for fraud are $17,000, Idaho Code section 6-1604(3) authorizes an award of up to $250,000 in punitive damages.

However, a punitive damage award of $250,000 presents constitutional implications.[4] When faced with an unconstitutionally high punitive damage award, other courts have remanded for a new trial if additional factual findings are needed or ordered a remittitur when no additional factual findings are needed. *S. Union Co. v. Irvin*, 563 F.3d 788, 792 n.4 (9th Cir. 2009) (stating

---

[3] We note that the district court's reduction of the punitive damages claim to three times the combined award for the contract and fraud claims was inconsistent with its decision at trial that Alexander could seek punitive damages only for fraudulent misrepresentation of healing. The district court did not explain the basis for this about-face. Our decision regarding the contract claim renders this inconsistency irrelevant.

[4] In *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 337–41, 233 P.3d 1221, 1259–63 (2010), this Court recognized that United States Supreme Court precedent held that the Due Process Clause of the Fourteenth Amendment provides limits on the amount of punitive damages that may be awarded. The United States Supreme Court recently emphasized that this Court is bound by its decisions interpreting the United States Constitution and federal statutes: "The Idaho Supreme Court, like any other state or federal court, is bound by this Court's interpretation of federal law." *James v. City of Boise, Idaho*, ___ U.S. ___, ___, 136 S. Ct. 685, 686 (2016).

that "[w]hen a punitive damage award exceeds the constitutional maximum, we decide on a case-by-case basis whether to remand for a new trial or simply to order a remittitur."); *Arellano v. Primerica Life Ins. Co., Co.*, 332 P.3d 597, 608 (Ariz. Ct. App. 2014) (ordering a remittitur of punitive damages). Here, because no additional factual findings are necessary, we are able to conduct "a de novo review of the constitutionality of the amount of a punitive damages award." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 338, 233 P.3d 1221, 1260 (2010).

"When reviewing punitive damage awards, we consider three guideposts: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.' " *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

First, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). With respect to this factor, the United States Supreme Court instructs courts to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* (quoting *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 419).

Here, the harm that was caused was economic, rather than physical. As the district court phrased it, Stibal's claim to have cured her cancer "was indisputably false" and that "[e]ven if she were merely enthusiastic in her own beliefs, she was most reckless in her preying on susceptible people." Although the harm was economic, we note that Stibal's marketing plan appears to have targeted a vulnerable and desperate audience, evincing indifference to, and reckless disregard for, the health of those who looked to ThetaHealing when dealing with life-threatening illnesses. The district court weighed the evidence and found the jury's award of punitive damages was necessary to deter Stibal's false claims that she used to "vigorously market" her healing method. Thus, the first guidepost weighs in favor of affirming an award of punitive damages as the record before us demonstrates that Stibal relied on her fraudulent claim of self-healing to successfully market ThetaHealing.

14

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Weinstein*, 149 Idaho at 339, 233 P.3d at 1261 (quoting *BMW of N. Am., Inc.*, 517 U.S. at 580). "[E]xemplary damages must bear a 'reasonable relationship' to compensatory damages." *Id.* (alteration in original) (quoting *BMW of N. Am., Inc.*, 517 U.S. at 580). "[T]he proper inquiry is 'whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred.' " *Id.* (quoting *BMW of N. Am., Inc.*, 517 U.S. at 581). The harm issue gauges harm to Alexander, not to others in similar situations. *Id.*; *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007). "The Supreme Court has been 'reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award.' " *Weinstein*, 149 Idaho at 339, 233 P.3d at 1261 (quoting *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 424). "However, 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " *Id.* (quoting *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425). "[T]he maximum single-digit ratio (9:1) that the Supreme Court suggested would rarely withstand constitutional scrutiny, and it is roughly nine times the ratio (4:1) that 'might be close to the line of constitutional impropriety.' " *Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 323, 179 P.3d 276, 286 (2008) (quoting *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425). Although the Supreme Court has imposed no rigid benchmark for punitive damages, it has reasoned the 4:1 ratio is close to the line of constitutional impropriety because of "a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425.

Here, if Alexander were awarded $250,000 in punitive damages, the ratio of punitive damages to compensatory damages would be approximately 15:1. This ratio significantly exceeds the line of constitutional impropriety. However, we cannot ignore the district court and jury's findings that Stibal's stories were indisputably false and that Stibal used them to vigorously market her business. This conduct was sufficiently reprehensible as to warrant punitive damages in an amount greater than a ratio of 4:1.

"The third indicium is 'the difference between [the punitive damages awarded] and the civil penalties authorized or imposed in comparable cases.' " *Weinstein*, 149 Idaho at 340, 233

P.3d at 1262 (alteration in original) (quoting *BMW of N. Am., Inc.*, 517 U.S. at 575) (alteration in original). Stibal does not provide argument on this issue and Alexander argues this issue is not relevant. We deem the third indicium to be irrelevant to this case.

We conclude that an award of $250,000 in punitive damages would be unconstitutional and that punitive damages in the amount of $100,000, approximately a ratio of 6:1, is the maximum which is constitutionally permissible under the facts of this case. Thus, upon remand, the district court is instructed to reduce the punitive damage award to $100,000.

**D. Stibal has waived her claim that ThetaHealing is a protected religion.**

On appeal, Stibal argues that it was fundamental error for the district court to permit the claim for punitive damages to go to the jury because ThetaHealing should be protected as a religion. We do not consider Stibal's religion arguments because "[i]t is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error. Hence, issues not raised below but raised for the first time on appeal will not be considered or reviewed." *Smith v. State*, 146 Idaho 822, 841, 203 P.3d 1221, 1240 (2009) (quoting *Whitted v. Canyon Cnty. Bd. of Comm'rs*, 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002)). Stibal's reliance on the doctrine of fundamental error is misplaced. We do not consider such claims in appeals in civil cases. *In re Doe*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014).

**E. Stibal is not entitled to a new trial based on other claimed errors at trial.**

Stibal's motion for new trial advanced other claims of error which the district court did not address. Stibal argues that the district court had a duty to grant a new trial on these issues under Rules 59(a)(1) and (7) because various prejudicial errors of law occurred.

Under Idaho Rule of Civil Procedure 59(a)(1), a "new trial may be granted" for "[i]rregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." Under Rule 59(a)(7) a "new trial may be granted" for "[e]rror in law, occurring at the trial." "The district court must disclose its reasoning for granting or denying the motion for a new trial unless its reasoning is obvious from the record." *Palmer v. Spain*, 138 Idaho 798, 802, 69 P.3d 1059, 1063 (2003). In this case, the district court did not disclose its reasoning in denying a new trial on some of these issues, but its reasoning is obvious from a review of the record. We will address Stibal's claimed errors in turn.

16

### 1. Error regarding the district court computation of damages.

The entirety of Stibal's argument on this point is that: "The Court failed to apply the appropriate standard as it relates to the computation of contract [sic] both contract and punitive damages." Our decision regarding Stibal's motion for JNOV resolves the first aspect of this claim and our determination that we can decide the appropriate measure of punitive damages resolves the second. Any error by the district court is no longer a basis for a grant of a new trial.

### 2. The district court did not err in admitting ThetaHealing videos.

Overruling relevancy and foundation objections from Stibal, the district court admitted various videos of Stibal promoting ThetaHealing. Stibal's motion for a new trial relied, in part, on her claim that the videos were irrelevant and admitted without proper foundation. On appeal, Stibal again argues that the videos were irrelevant and admitted without proper foundation.

First we consider the relevancy issue. "This Court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion." *U.S. Bank Nat. Ass'n N.D. v. CitiMortgage, Inc.*, 157 Idaho 446, 451, 337 P.3d 605, 610 (2014). However, "[t]he question of relevancy is not a discretionary matter as there is no issue of credibility or finding of fact for the trial court to resolve prior to deciding to admit or reject the evidence." *Lubcke v. Boise City/Ada Cnty. Hous. Auth., Worrell*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). As a consequence, this Court reviews a district court's decision on relevancy de novo. *April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 516, 328 P.3d 480, 496 (2014). "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." I.R.E. 402. " 'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401.

We find the videos to be relevant for several reasons. The videos helped the jury understand the concept of ThetaHealing. Alexander testified that the videos represented how Stibal represented ThetaHealing to her and that they were "very consistent" with how Stibal described and promoted ThetaHealing. Alexander also testified that the healing stories contained in the videos were "extremely consistent" with how Stibal had described stories of healing to Alexander. One of the videos, made in 2010, prompted Alexander to first begin to question the veracity of Stibal's claim to have cured herself of cancer. Alexander saw the video after it was

posted on the internet by Stibal. The video showed a medical record saying Stibal was "suspicious for lymphoma, but not diagnostic."

Stibal takes issue with the fact that the videos were created after the representations that Alexander relied upon in taking the classes were made. This argument misses the mark. The videos were not relevant because Alexander relied on them; rather, they were relevant to demonstrate the nature of the claims that Stibal was advancing.

"Authentication or identification of documentary evidence is a condition precedent to its admissibility." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011) (citing I.R.E. 901). One example of authentication or identification that complies is "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." I.R.E. 901(b)(1). Foundation "is a matter within the trial court's discretion." *Harris, Inc.*, 151 Idaho at 770, 264 P.3d at 409. Alexander testified that Stibal was the speaker in the videos. We are unable to conclude that the district court abused its discretion by finding sufficient foundation for the admission of the videos.

### 3. Stibal's argument that the district court erred by preventing her from presenting evidence that ThetaHealing works is waived.

Before trial, Stibal brought a motion in limine arguing the evidence presented at trial should be limited to the specific factual instances that were pled in Alexander's fraudulent healing claim. The district court agreed. Later, using similar reasoning, the district court did not allow Stibal to present testimony about past healings or conduct demonstrations in the courtroom. This ruling affected both parties. For example, Stibal was not allowed to have a witness testify that ThetaHealing cured his Type I diabetes, and Alexander was not allowed to present Stibal's former daughter-in-law's testimony regarding events that she described in her book *ShadyHealing*. Stibal argues that this ruling effectively did not allow Stibal to present a case.

We do not reach the merits of Stibal's arguments. Stibal only presents argument generally stating the district court erred in its ruling, but she provides no authority in support of her claim that the district court erred. As a result, Stibal waives this argument. *See H.F.L.P., LLC v. City of*

18

*Twin Falls*, 157 Idaho 672, 686, 339 P.3d 557, 571 (2014) ("issues on appeal are not considered unless they are properly supported by both authority and argument.").[5]

### 4. The district court did not err in allowing impeachment testimony about Stibal's character for truthfulness.

Over objection, the district court allowed Stibal's ex-husband to testify that he did not think Stibal was a truthful person. Stibal argues that this was error.

Idaho Rule of Evidence 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Under "this rule, testimony by one witness that another witness was, or was not, telling the truth when they made a *particular statement* is not admissible evidence. Whether a witness was being truthful at the time the witness made a statement is for the jury, not another witness, to determine." *State v. Raudebaugh*, 124 Idaho 758, 768, 864 P.2d 596, 606 (1993).

Here, Stibal challenges the admission of testimony regarding her character for truthfulness. However, the rule makes it clear that Stibal's testimony could be attacked by way of opinion testimony regarding character for truthfulness.

Stibal also argues the testimony should have been excluded because of the fact that she had been divorced from the witness for fifteen years rendered his testimony irrelevant. We disagree. The ex-husband's testimony related to the time Stibal claimed to have been diagnosed with cancer prior to curing herself.

### 5. Any error in the admission of Stibal's medical records was harmless.

Over Stibal's attorney's objection based upon an absence of foundation, the district court admitted all of Stibal's health records because Alexander's expert's opinions were based upon his review of the records. Stibal's attorney was specific in his objection, indicating that he had "zero problem with records associated with the cancer diagnosis being admitted" and that his objection went to other health records. The district court stated that "they're admissible assuming that Dr. Shull can establish that he's, in fact, reviewed them and then can make an explanation of

---

[5] Even if Stibal had presented authority in support of her claim, it would not have assisted her. We have affirmed the judgment for fraudulent misrepresentation on the basis of Stibal's representations regarding her cancer diagnosis. The efficacy of ThetaHealing is not relevant to Stibal's false claim that she had been diagnosed with cancer, that doctors told her that the leg might be amputated and that she needed to begin chemotherapy.

their meaning." There was no indication that Dr. Shull was able to authenticate the records—only that he had reviewed them in formulating his opinion. Idaho Rule of Evidence 703 provides, in pertinent part: "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." As the district court made no finding that Stibal's medical records were necessary for the jury's evaluation of Dr. Shull's testimony, the district court may have erred.

Stibal's attorney specifically indicated that he did not object to introduction of the medical records relating to Stibal's cancer diagnosis. As that is the claim upon which our decision affirming the verdict for fraudulent misrepresentation and punitive damages is grounded, we find any error to be harmless.

### 6. Stibal has waived her argument that the fraud claim was barred by the statute of limitations.

Stibal argues the fraudulent healing claim was barred by the three-year statute of limitations established by Idaho Code section 5-218(4). Alexander responds that Stibal is raising this issue for the first time on appeal. Alexander is correct. Thus, we will not address this claim. *Smith v. State*, 146 Idaho 822, 841, 203 P.3d 1221, 1240 (2009).

### F. Neither party is awarded attorney fees or costs on appeal.

Stibal asks for attorney fees on appeal pursuant to Idaho Code section 12-121. Alexander likewise requests attorney fees on appeal, citing case law that holds that an award of attorney fees is appropriate when the appellant merely asks this Court to second-guess the jury or trial court. Since Stibal has prevailed on the breach of contract issue and partially prevailed on the punitive damages issue and Alexander has prevailed on her fraudulent misrepresentation claim and partially prevailed on the punitive damages issue, we find that neither party has prevailed on appeal and therefore no attorney fees will be awarded. For the same reason, neither party is awarded costs on appeal. *See Van Brunt v. Stoddard*, 136 Idaho 681, 690, 39 P.3d 621, 630 (2001).

## IV. CONCLUSION

We reverse the district court's order denying Stibal's motion for JNOV on the contract claim. We vacate the district court's judgment and remand with directions for the district court to enter a new judgment reflecting our ruling on the contract claim and the reduction in punitive damages to $100,000. No costs or fees are awarded on appeal.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES **CONCUR**.